UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: **12-22087-CIV-MORENO**

GERARDO GERSON and RIVADAVIA, S.A.,

    Petitioners,

vs.

UBS FINANCIAL SERVICES, INC. and OLGA
NOBREGA PEREIRA,

    Respondents.
_____/

## ORDER DENYING PETITION TO ANNUL OR SET ASIDE ARBITRAL AWARD AND GRANTING CROSS-PETITION TO CONFIRM ARBITRAL AWARD

THIS CAUSE came before the Court upon Petitioners' Petition to Annul or Set Aside Arbitral Award and Compel Arbitration **(D.E. No. 1)**, filed on **June 5, 2012**. Petitioners Gerardo Gerson and Rivadavia, S.A. filed this petition to set aside an arbitral award rendered in favor of Respondents UBS Financial Services, Inc. and Olga Nobrega Pereira. Respondents have challenged Petitioners' rationale for setting aside the award, and in turn have filed a cross-petition to confirm the decision. Since Petitioners have failed to allege an adequate basis for setting aside the arbitral award, this Court denies their petition and correspondingly grants Respondents' cross-petition to confirm the award.

### I. FACTUAL BACKGROUND

Petitioner Gerson, a citizen of Argentina, and his investment vehicle Rivadavia, S.A., incorporated and operating in the British Virgin Islands, held investment accounts at Respondent UBS for several years prior to the global financial crisis of 2008. With the onset of the economic

downturn, Petitioners' investments in market stock mutual funds significantly diminished in value. Alleging mismanagement of the funds, Petitioners commenced an arbitration in August 2010 against UBS and their financial adviser, Respondent Olga Nobrega Pereira, before the Financial Industry Regulatory Authority ("FINRA") in Miami. In bringing this proceeding, Petitioners signed a FINRA Uniform Submission Agreement, thereby agreeing to "submit . . . [the matter] to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure." Resp'ts' Opp'n to Pet. Ex. C. Additionally, Petitioners acknowledged in the Agreement that they had "read the procedures and rules of FINRA relating to arbitration" and agreed "to be bound by these procedures and rules." *Id.*

Pursuant to FINRA Rule 12514, the parties began discussions in September 2011 regarding potential witnesses. On September 26, Petitioners communicated to Respondents that their only witness during their case in chief would be an expert, Daniel Marx. Petitioners then confirmed Marx as their sole witness in an email on September 28. *See* Resp'ts' Opp'n to Pet. Ex. E, at 2. During these communications, neither party discussed the possibility of raising motions in response to evidence that would be presented at the hearing.

Accordingly, during the hearing on October 3–4, Petitioners called Marx to testify and rested their case following the conclusion of his testimony. At this point, Petitioners sought to move into evidence hundreds of pages of documents, maintaining that these exhibits constituted the evidence necessary to support their case. Respondents then moved for a directed verdict under FINRA Rule 12504(b). Taking Respondents' motion under advisement, the arbitration panel permitted Petitioners to re-open their case and present witnesses to introduce and authenticate their documentary evidence. Yet, rather than engage in the time-consuming process

of witness authentication, Respondents stipulated to the admission of all but two of the exhibits, one of which had already been precluded pursuant to a prior motion in limine. The panel subsequently admitted all of the exhibits into evidence, save the one that the panel had made a prior ruling on.

With the admission of these documents into evidence, Respondents once again moved for a directed verdict. Before ruling, the panel granted Petitioners another opportunity to establish their case:

> We are a panel here, and we are trying to give you every opportunity to prove your case, including letting you reopen your case, including letting you introduce documents into evidence which you say prove your case. So what we are looking for is not the tap dancing.
> I want you to show the panel specifically what documents in evidence you have to show that Ms. Pereira did anything wrong. . . .
> I specifically asked you, you rested your case. You chose to present one witness, Mr. Marx. You rested your case. I then asked I think three times are you sure you rest your case, do you want to call any other witnesses, and you said no. Next time was you want to introduce these documents.
> You were given every opportunity to go ahead and present whatever witnesses that you wanted. If you wanted to at that time maybe even call the people from UBS, maybe as adverse witnesses or whatever, you might have had the opportunity to do that. You have chosen not to. There is a procedure to be followed.
> UBS then went ahead and they filed their motion for a directed verdict to dismiss. So where we are right now, and I have to give everybody, we have to give everybody the same procedural fairness. I cannot weigh heavily for you or go ahead and prejudice UBS. So we are doing our best, okay, to run this right down the middle.
> Now, where we are right now is you have these documents. You have been telling us that these documents will prove your case. So I'm asking you show me the beef. Don't just say here it is.

Resp'ts' Opp'n to Pet. Ex. H, at 415:4–13, 416:21–25 to 417:1–23. However, following Petitioners' presentation, the panel decided that Petitioners had failed to establish a prima facie case and granted Respondents' motion. Respondents then entered a request for attorneys' fees,

asserting that Petitioners' claims were frivolous. The panel later denied this motion but awarded UBS $92,847.00 in costs.

Petitioners now contend that the Court should annul the panel's decision under the Inter-American Convention on International Commercial Arbitration ("Panama Convention"). In particular, Petitioners allege that they were not duly notified of the arbitration procedure that the panel followed and that the procedure was not carried out in accordance with the terms of an agreement between the parties. Respondents in turn seek confirmation of the award and request that the Court impose sanctions on Petitioners for proceeding with their petition despite any real legal basis for doing so.

## II. LEGAL STANDARD

The Federal Arbitration Act provides for "expedited judicial review to confirm, vacate, or modify arbitration awards." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008). Because the Act creates a "presumption in favor of confirming arbitration awards," judicial review of arbitral decisions is limited and a court "must 'give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances.'" *De Beers Centenary AG v. Hasson*, 751 F. Supp. 2d 1297, 1301 (S.D. Fla. 2010) (quoting *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1014 (11th Cir. 1998)). Indeed, "arbitration proceedings 'need not follow all the "niceties" of the federal courts; [they] need provide only a fundamentally fair hearing.'" *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1443 (11th Cir. 1998) (quoting *Grovner v. Georgia-Pacific Corp.*, 625 F.2d 1289, 1290 (5th Cir. Unit B 1980)). Moreover, the "party seeking vacatur bears the burden of establishing grounds sufficient to vacate the arbitration award." *Id.* Thus, if the party cannot establish one of the

specified grounds for vacatur, the court must confirm the arbitral award. *See Carey Rodriguez Greenberg & Paul, LLP v. Arminak*, 583 F. Supp. 2d 1288, 1290 (S.D. Fla. 2008).

The Act codifies the Panama Convention at 9 U.S.C. §§ 301–307, stating that the Convention shall apply where "a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the [Convention]," 9 U.S.C. § 305(1) (2012), and the commercial relationship at issue in the arbitration is not "a relationship which is entirely between citizens of the United States." *Id.* § 202 (incorporated by reference to apply to the Panama Convention in 9 U.S.C. § 302). The Convention therefore applies in the present case as the majority of the parties are citizens of either the United States or Argentina, states that have both ratified the Convention.

In conjunction with the Convention, the Act instructs that a court "shall confirm the [arbitral] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* § 207 (incorporated by reference to apply to the Panama Convention in 9 U.S.C. § 302). The Convention itself specifies a few grounds for a court to annul an arbitral award, two of which Petitioners have raised here. First, the Convention permits a court to disavow an award where "the party against which the arbitral decision has been made was not duly notified of the appointment of the arbitrator or of the arbitration procedure to be followed, or was unable, for any other reason, to present his defense." Panama Convention, art. 5(1)(b), Jan. 30, 1975, O.A.S.T.S. No. 42, 14 I.L.M. 336. Alternatively, courts may reject an award where "the constitution of the arbitral tribunal or the arbitration procedure has not been carried out in accordance with the terms of the agreement signed by the parties." *Id.* at art. 5(1)(d).

## III. DISCUSSION

### *A. Article 5(1)(b)*

Petitioners first maintain that, during the proceedings, the panel engaged in a pattern of procedural irregularities and aberrations that deprived them of any ability to have notice of the arbitration procedure in advance, thereby violating article 5(1)(b) of the Convention. They object principally to the panel's handling of their documentary evidence and presentation of witnesses, arguing that the panel acted improperly by ordering Petitioners to walk the panel through the evidence contained in the documents. They assert in particular that the panel's actions revealed its unwillingness to consider the documents as substantive proof of Petitioners' claims. Furthermore, they contest Respondents' motion for directed verdict, contending that no such motion exists in the FINRA Rules. Finally, Petitioners protest the panel's decision to grant Respondents' motion. They argue that since the panel later determined that Petitioners' claims were non-frivolous by denying Respondents' motion for attorneys' fees, the panel could not also hold that the claims lacked prima facie merit by granting Respondents' motion for directed verdict.

In short, none of Petitioners' contentions satisfy the heavy burden necessary for this Court to annul the arbitral award.. From the outset, the Court notes that, prior to the hearing, Petitioners agreed to be bound by the FINRA By-Laws, Rules, and Code of Arbitration Procedure, and acknowledged that they had read and understood those rules. *See* Resp'ts' Opp'n to Pet. Ex. C. Petitioners now only make general allegations regarding the panel's procedural deviations. Apart from their argument regarding the motion for directed verdict, they have not cited to any specific FINRA Rules that the panel actually departed from during the hearing.

As for their objection to Respondents' motion for directed verdict, FINRA Rule 12504(b) expressly contemplates parties making motions to dismiss at the conclusion of a party's case in chief. *See* Fin. Indus. Regulatory Auth. R. 12504(b) ("A motion to dismiss made after the conclusion of a party's case in chief is not subject to the procedures set forth in paragraph (a)."). Indeed, Respondents themselves even referred to their action as a "Motion to Dismiss for failure to state a prima facia [sic] case" and discussed with the panel at length the standard for a motion to dismiss. *See* Resp'ts' Opp'n to Pet. Ex. G, at 330:9–10, 331:12–25 to 332:1–6. Though the final award may have referred to the motion as one for a directed verdict, there is no indication that the panel applied any different of a standard than normally applied for a motion to dismiss.

Finally, Petitioners' points regarding the documentary evidence and the motion for attorneys' fees similarly fail to demonstrate that Petitioners were deprived of notice of the panel's arbitration procedure. As to the documentary evidence, Petitioners' argument is a non-starter as the panel not only admitted all of the eligible exhibits into evidence, but also gave Petitioners a chance to explain how the documents established their claims. Petitioners' allegations of inconsistency in the panel's rulings on the motions for directed verdict and attorneys' fees likewise miss the mark. Even assuming at this point that the panel did in fact hold that Petitioners' claims were non-frivolous when it denied Respondents' motion for attorneys' fees, this argument does not demonstrate how this decision deprived Petitioners' of notice of the procedure employed at the hearing in violation of article 5(1)(b). Petitioners have not shown how the panel engaged in any procedural irregularities by reaching those two final decisions about Petitioners' claims. In sum, Petitioners have simply not established the type of fundamental unfairness necessary for this Court to set aside the arbitral award.

### *B. Article 5(1)(d)*

Petitioners next argue that their pre-hearing discussions with Respondents concerning the order and presentation of witnesses constituted a binding agreement, even though not a signed writing. They claim that had they known that the panel would have granted Respondents' motion for directed verdict, they would have proposed a different witness list. Consequently, in granting the motion, Petitioners assert that the panel contravened article 5(1)(d) by not carrying out its procedure in accordance with the parties' agreement.

Putting aside for the moment that article 5(1)(d) specifies that the panel carry out its procedure in accordance with an "agreement *signed* by the parties," Panama Convention, art. 5(1)(d) (emphasis added), Petitioners have not offered any evidence of a concession by Respondents not to raise any motions in response to evidence that Petitioners might have presented at the hearing. Indeed, it would be highly presumptuous to assume that Respondents would grant such a concession before even having had an opportunity to hear Petitioners' evidence. Thus, even assuming there was an agreement of some kind as to the order and presentation of witnesses, the Court cannot find that Respondents also agreed not to raise a motion for directed verdict. Regardless, as the Court notes, the Convention requires a signed agreement from the parties in order to trigger article 5(1)(d). As such, the Court also rejects Petitioners' contention that the panel did not carry out its procedure in accordance with the parties' agreement.

### IV. CONCLUSION

For the above reasons, it is

**ADJUDGED** that:

(1) Petitioners' Petition to Annul or Set Aside Arbitral Award and Compel Arbitration **(D.E. No. 1)**, filed on **June 5, 2012**, is DENIED.

(2) Respondents' Cross-Petition to Confirm the FINRA Arbitration Award **(D.E. No. 5)**, filed on **August 6, 2012**, is GRANTED.

(3) Respondents' request for sanctions is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this /0 day of September, 2012.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record